UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ZAC OLDHAM, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| NATIONWIDE INSURANCE | § | |
| COMPANY OF AMERICA, | § | CIVIL ACTION NO. 3:14-CV-575-B |
| NATIONWIDE MUTUAL | § | |
| INSURANCE COMPANY, | § | |
| NATIONWIDE MUTUAL FIRE | § | |
| INSURANCE COMPANY, | § | |
| NATIONWIDE LIFE INSURANCE | § | |
| COMPANY, NATIONWIDE | § | |
| GENERAL INSURANCE COMPANY, | § | |
| NATIONWIDE PROPERTY & | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| and MARK DEHNING, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand (doc. 10), filed March 17, 2014, and Defendants' Motion to Transfer (doc. 4), filed February 21, 2014. For the reasons stated below, the Court finds that Plaintiff's Motion to Remand (doc. 10) should be and hereby is **GRANTED**. Because the Court remands the case, Defendants' Motion to Transfer (doc. 4) is **DENIED as moot**.

I.

BACKGROUND

This case arises out of an agreement between Plaintiff Zac Oldham and Defendants authorizing Oldham to sell insurance policies on behalf of Nationwide as its agent. Doc. 1-1, Orig.

- 1 -

Pet. Ex. A-2 ¶ 22. Oldham complains that Defendants misrepresented certain provisions of the agreement and wrongfully terminated the agreement. *Id.* ¶¶ 22-23. He asserts state-law claims for breach of contract, common law fraud, and declaratory judgment. *Id.* ¶¶ 22-24.

A.   *Parties & Citizenship*

Plaintiff in this case is individual Zac Oldham ("Oldham"), a Texas citizen. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 1. Defendants are six Nationwide Insurance companies and affiliates: Nationwide Insurance Company of America, Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, Nationwide Life Insurance Company, Nationwide General Insurance Company, and Nationwide Property and Casualty Insurance Company (collectively "Nationwide"); and one individual, Mark Dehning ("Dehning"), Nationwide's Texas District Sales Manager. *Id.* ¶¶ 2-8. Defendant Nationwide Insurance Company of America is incorporated in Wisconsin and has its principal place of business in Ohio. Doc. 8, Defs.' Ans. ¶ 2. The remaining five defendant corporations are each incorporated in Ohio with their principal places of business in Ohio. *Id.* ¶¶ 3-7. Individual Mark Dehning is a Texas citizen. Doc 10, Mot. to Remand ¶ 4.

B.   *Factual Background*

In 2008, Oldham was considering taking over his father's Nationwide agency. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 13. He discussed this possibility with a Nationwide manager not named in this lawsuit, whom he alleges told him that Nationwide sets performance goals for its agents, but that they are adjustable and that failure to meet them is not a basis for termination. *Id.* Oldham alleges that the same manager gave him Nationwide corporate manuals that also indicated that the performance goals were not requirements. *Id.* ¶ 14. Nationwide denies that the performance goals were "soft" and that such was ever represented to Oldham. Doc. 8, Defs.' Ans. ¶ 13. On the basis of those alleged

representations, Oldham agreed to take over his father's agency and executed Nationwide's "Replacement Agency Executive Program Performance Agreement" ("RAE Agreement") in September of 2008. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 14; Doc. 7, Am. Ex. A.

RAE Agreements like the one executed in this case are what Nationwide uses during the agent-replacement process to allow the incoming agent to purchase the "servicing rights" to existing Nationwide insurance policies previously held by the outgoing agent. Doc. 14, Defs.' Resp. 3. The incoming agent does not immediately obtain the servicing rights upon execution of the RAE Agreement, but rather goes through a trial period during which, according to Nationwide, the agent must meet certain performance goals established by the RAE Agreement. *Id*. At the end of the trial period, the incoming agent "graduates" from the Replacement Agency Executive Program ("RAE Program") and formally obtains the servicing rights. *Id*. The RAE Agreement in this case contains a "Minimum Production Plan" which purports to establish the performance goals that Oldham allegedly had to meet in order to graduate from the RAE Program. Doc. 7, Am. Ex. A ¶ 8. It also contains a "Governing Law" clause purporting to set Franklin County, Ohio, as the exclusive venue and Ohio state law as the governing law for any disputes arising out of the RAE Agreement. *Id.* ¶ 40.

Two years after the execution of the RAE Agreement, relations between Oldham and Nationwide began to sour. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 15. Oldham alleges that Nationwide management told him that he would be eligible for the "III Network," which would allow him to write policies that were ineligible for Nationwide. *Id.* ¶ 16. However, according to Oldham, when he requested access to the III Network, Nationwide told him that he was actually ineligible, then that he was eligible-but-rejected, then finally that he could graduate early from the RAE Program if he abandoned his request to access the III Network. *Id.* Then, in November of 2010, Oldham began

working with Defendant Dehning to meet the requirements for early graduation. *Id.* ¶ 17. Oldham alleges that Dehning told him that his performance was sufficient to graduate early from the RAE Program. *Id.*

Oldham never graduated from the RAE Program. *Id.* ¶ 20. Nationwide allegedly rescheduled his graduation date from December, 2010, to January, 2011. *Id.* ¶ 17. When Oldham contacted Nationwide at the end of January to inquire about his early graduation from the RAE Program, Dehning allegedly told him that he could not graduate early because he did not meet his performance goals. *Id.* ¶ 18. Dehning allegedly demanded that Oldham sign an acknowledgment that Oldham had failed to meet his production goals, which Oldham refused to sign. *Id.* ¶ 19. By contrast, Oldham alleges that Nationwide's Associate Vice President of Sales told Oldham in late 2011 that Oldham's failure to meet his performance goals was not Oldham's fault, and that the goals were "soft" anyway. *Id.* Nonetheless, Dehning told Oldham that he was terminated in December of 2011. *Id.* ¶ 20.

C.   *Procedural Background*

Oldham brought this suit in Texas state court alleging a claim for common law fraud against Nationwide and Dehning, a claim for breach of contract against Nationwide individually, and seeking a declaratory judgment as to the parties' rights and liabilities under the RAE Agreement. Doc. 1-1, Orig. Pet. Ex. A-2 ¶¶ 22-24. With respect to Defendant Dehning, Oldham asserts that Dehning is personally liable in common law fraud for his alleged misrepresentations. *Id.* ¶ 28.

Defendants removed this case to the Northern District of Texas, claiming diversity of citizenship as the basis for federal subject matter jurisdiction. Doc. 1, Not. of Removal ¶ 5. Oldham now moves to remand to state court, noting that the presence of a forum defendant precludes removal. Doc. 10, Mot. to Remand ¶ 9. Nationwide argues that Dehning is "fraudulently" joined,

and therefore that his status as a defendant does not defeat diversity jurisdiction. Doc. 14, Defs.' Resp. 2. Defendants also move to transfer venue to the Southern District of Ohio pursuant to the forum-selection clause in the RAE Agreement. Doc. 4, Defs.' Mot. to Transfer. Oldham opposes transfer, arguing that the forum-selection clause is invalid or unenforceable. Doc.15, Pl.'s Resp.

## II.

## LEGAL STANDARDS

A civil action pending in state court may be removed by the defendant to federal court if the federal court has original jurisdiction over it. 28 U.S.C. § 1441(a). The original jurisdiction of federal courts is limited. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). They possess only the power authorized by the Constitution and statute. *Id.* One such authorization is diversity of citizenship amongst the parties. 28 U.S.C. § 1332. United States statute confers jurisdiction on the federal district courts over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." *Id.* Under § 1332, "citizens of different States" means that each plaintiff must be diverse from each defendant. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). However, even if a civil action falls within the diversity jurisdiction of the federal courts, it may not be removed if any of the defendants is a citizen of the state in which the action is pending. 28 U.S.C. § 1441(b)(2). Furthermore, "any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

Though diversity jurisdiction requires complete diversity, a non-diverse defendant may be disregarded for the purpose of analyzing complete diversity if the non-diverse defendant was improperly joined. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011)

(citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). The burden to show improper joinder is on the removing party, and is a heavy one. *Cuevas*, 648 F.3d at 249. The removing party can establish improper joinder by showing either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc). Nationwide relies only upon the latter showing. Doc.14, Defs.' Resp. 7. To make the second showing, a defendant must demonstrate that there is no possibility of the plaintiff's recovering against the non-diverse defendant under the relevant law. *Smallwood*, 385 F.3d at 573. Only the possibility of recovery, not the motive of the plaintiff behind joining the non-diverse defendant, is relevant. *Id.* at 574. Under this analysis, there are two ways to decide whether the plaintiff could possibly recover against the non-diverse defendant. *Id.* at 573. One way is to conduct a "Rule 12(b)(6)-type analysis," looking to the face of the complaint to assess whether it states a claim against the non-diverse defendant. *Id.* The other way is to "pierce the pleadings" and conduct a Rule 56-type analysis, though this way is only applicable if the plaintiff has stated a claim against the non-diverse defendant, but summary judgment evidence reveals facts withheld by the plaintiff relevant to the propriety of joinder. *Id.* The Rule 12(b)(6)-type analysis is before the Court in this case because the parties do not rely on any documents outside of Oldham's Complaint.

### III.

### ANALYSIS

The Court must first decide which motion to prioritize because granting either motion moots the other. Once the Court has decided which motion to prioritize, it must then consider the merits of the prioritized motion.

A.    *Which Motion to Decide First*

Oldham's Motion to Remand raises a question regarding the subject matter jurisdiction of this Court. Except in special cases, a district court considers subject matter jurisdiction as a preliminary matter. *Pharos Capital Group, LLC v. Nutmeg Ins. Co.*, No. 3:13-CV-2603-B, 2014 WL 737244, at *3 (N.D. Tex. Feb. 26, 2014) (citing *Doubletree Partners, L.P. v. Land America Title Co.*, No. 3:08-CV-1547-O, 2008 WL 5119599, at *2 (N.D. Tex. Dec. 3, 2008)). Therefore, when a district court is presented with both a motion to remand and a motion to transfer, the court will typically prioritize the motion to remand. *Id*. However, three factors favor prioritizing a motion to transfer: (1) a suit is already pending in the transferee district, (2) the remand motion will not suffer prejudice as a result of the transfer, and (3) transfer would permit the court who would ultimately try the case to rule on the remand motion. *Id*. This Court has prioritized a motion to transfer over a motion to remand when there was a corresponding suit involving the same parties and issues filed first and pending in another district, in which case the transfer consolidated the cases for jurisdictional analysis. *Doubletree*, 2008 WL 5119599, at *2. However, this Court has declined to prioritize a Motion to Transfer over a Motion to Remand when there was no such corresponding suit. *Pharos*, 2014 WL 737244, at *4.

This case falls within the reasoning of *Pharos* rather than that of *Doubletree* because it is an isolated suit with no similar suit pending in any other district. *See id*. There is no reason to leave the jurisdictional analysis to another court, and deciding the Motion to Remand first will allow this Court to forego a transfer analysis. *See id*. Moreover, the Motion to Transfer in this case is premised on a forum-selection clause, the contractual validity of which Oldham contests. Thus, enforcing the clause via transfer would inappropriately acknowledge its validity when the Court does not clearly

have jurisdiction over this case. The Court will therefore decide the Motion to Remand first.

B.   *Choice of Pleading Standard*

With regards to the Rule 12(b)(6)-type analysis in an improper joinder case, the law is unsettled regarding whether to apply state or federal pleading standards to the Complaint. *Yeldell v. GeoVera Speciality Ins. Co.*, No. 3:12-CV-1908-M, 2012 WL 5451822, at *2 (N.D. Tex. Nov. 8, 2012) ("[t]he Fifth Circuit has not directly addressed the [choice of pleading standards] issue in a published opinion"). However, the Fifth Circuit applied state pleading standards to an improper joinder analysis in an unpublished opinion. *See De La Hoya v. Coldwell Banker Mex. Inc.*, 125 F. App'x 533, 537-38 (5th Cir. 2005) (unpublished opinion). Recently, fairness considerations have moved courts in this district toward applying state, rather than federal, pleading standards to improper joinder analyses.[1] This Court, therefore, will apply the state pleading standard to the improper joinder analysis here.

C.   *Texas Pleading Standard*

Texas state courts use a "fair notice" pleading standard, which looks to "whether the opposing party can ascertain from the pleading[s] the nature and basic issues of the controversy and what testimony will be relevant." *SFTF Holdings, LLC v. Bank of Am.*, No. 3:10-CV-0509-G, 2011 WL 1103023, at *1 (N.D. Tex. Mar. 22, 2011) (quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896 (Tex. 2000)). This standard is generally more forgiving than the federal pleading

---

[1] *Esteban v. State Farm Lloyds*, No. 3:13-CV-3501-B, 2014 WL 2134598, at *7 (N.D. Tex. May 22, 2014) (Boyle, J.) (applying state pleading standards to improper joinder analysis); *Patton v. Adesa Texas, Inc.*, No. 3:13-CV-2402-M, 2013 WL 6264792, at *1 (N.D. Tex. Dec. 4, 2013) (Lynn, J.) (same); *Bedford Internet Office Space, LLC v. Travelers Cas. Ins. Co.*, No. 3:12-CV-4322-N-BN, 2013 WL 3283719, at *4 (N.D. Tex. Jun. 28, 2013) (Godbey, J.) (same); *Arana v. Allstate Texas Lloyds*, No. 3:13-CV-0750-D, 2013 WL 2149589, at *3 (N.D. Tex. May 17, 2013) (Fitzwater, J.) (same); *Bart Turner & Associates v. Krenke*, No. 3:13-CV-2921-L, 2014 WL 1315896, at *5 (N.D. Tex. Mar. 31, 2014) (Lindsay, J.) (same).

standard, as a pleading in Texas may contain legal conclusions as long as fair notice to the opponent is given by the allegations as a whole. TEX. R. CIV. P. 45(b); *Yeldell*, 2012 WL 5451822, at *2. Furthermore, an original petition should be construed liberally in favor of the pleader, and the court "should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged." *Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993); *see also Landor v. State Farm Lloyds*, No. 3:12-CV-4268-M, 2013 WL 1746003, at *2 (N.D. Tex. April 23, 2013).

On March 1, 2013, Rule 91a of the Texas Rules of Civil Procedure went into effect, providing:

> [A] party may move to dismiss a cause of action on the grounds that it has no basis in law or fact. A cause of action has no basis in the law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded.

Tex. R. Civ. P. 91a.1. According to a recent case from the Northern District of Texas, "[t]his new rule allows a state court to do what a federal court is allowed to do under Federal Rule of Civil Procedure 12(b)(6)." *Krenke*, 2014 WL 1315896, at *3. Whether the Texas pleading standard is moving closer to the federal pleading standard remains to be seen; there is very little guidance from Texas courts interpreting Rule 91a. The only Texas court to comment—an appeals court—would incorporate almost all federal 12(b)(6) jurisprudence into the new rule. *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754-55 (Tex. App.—Beaumont 2014, pet. filed) (finding case law interpreting Federal Rule 12(b)(6) "instructive" and reciting at length, then applying, the federal pleading standard in conjunction with Texas Rule 91a). Until the applicability of the new rule becomes more clear, this Court will follow the lead of its colleague: "[t]he standard for pleading in Texas is still fair

notice; however, fair notice must now be judged in the context of Rule 91a." *Krenke*, 2014 WL 1315896, at *3; *see also Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990) (in deciding improper joinder, "all ambiguities in the controlling state law are resolved in favor of the nonremoving party").

D.   *Motion to Remand*

In this case, Oldham moves to remand on the ground that Dehning, a Texas citizen, is properly joined as a defendant, thus precluding removal. Doc. 10, Mot. to Remand; 28 U.S.C. § 1441(b)(2). Nationwide responds by asserting that Oldham has failed to make out a claim for relief against Dehning in his Complaint. Doc. 14, Defs.' Resp. For the reasons stated below, the Court concludes that Nationwide and Dehning have failed to meet their burden to show that Oldham has no possibility of recovery against Dehning under the applicable state law, and therefore Dehning is a properly joined, forum defendant. *Smallwood*, 385 F.3d at 573.

Oldham's sole claim against Dehning in this case is for fraud under Texas common law. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 23. In Texas, "[t]he elements of fraud are a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Sears, Roebuck & Co. v. Meadows*, 877 S.W.2d 281, 282 (Tex. 1994) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)).

Below is a list of all the allegations in Oldham's original petition relevant to Dehning specifically:

> Defendant Mark Dehning was District Sales manager with Nationwide serving the Texas District where Plaintiff is located, and was a management level employee of Nationwide at all times relevant to this lawsuit . . . Dehning had been actively

engaged in the business and other transactions at issue in this case through Nationwide's termination of Plaintiff's agency.

In November of 2010, Defendant Dehning began working with Mr. Oldham to finish the requirements for early graduation. Mr. Dehning represented to Mr. Oldham that his production was sufficient to qualify him for early graduation and to qualify him as an IC agent effective December 1, 2010, if Mr. Oldham's business plan was accepted by Nationwide.

Near the end of January of 2011, Mr. Dehning then contacted Mr. Oldham to let him know that Mr. Oldham would not graduate early because his production was, in fact, "96.2%" of his production goals and, therefore, not sufficient for graduation, much less early graduation.

Several months later Mr. Dehning appeared at Mr. Oldham's office unannounced and demanded that Mr. Oldham sign an acknowledgment agreeing that he had failed to meet his production goals.

On December 5, 2011, Mr. Dehning again appeared at Mr. Oldham's office unannounced, explained to Mr. Oldham that the contract was being terminated for cause due to his failure to meet production goals, that Mr. Williams's representations were false, that the termination was effective immediately, and that all access, including e-mail network, and open transactions (e.g. clients waiting for an insurance binder for mortgage closings, new car purchases, and commercial transactions) were also terminated immediately.

**Common Law Fraud** . . . Defendants, including Mr. Dehning individually, made one or more representations to Plaintiff concerning the adjustment of Plaintiff's growth numbers, regarding the calculation or figures used to establish Plaintiff's production goals, and concerning rate increases and underwriting actions by the Nationwide Companies, among other representations; that these representations were material and false; that Mr. Dehning . . . knew these representations to be false, made these representations recklessly, as positive assertions, and without knowledge of their truth; that Defendants, including Mr. Dehning individually, made the representations with the intent that Plaintiff act on them; that Plaintiff relied on these representations by, including but not limited to, concentrating on certain aspects of his agency and not others; and that the representations caused Plaintiff's injury.

The individual Defendants are also liable in their personal, individual capacities for the wrongful and illegal actions and conduct as set forth herein. These Defendants are individually liable for the fraud and misrepresentations, and the misleading representations and omissions that induced Mr. Oldham to enter into certain of the

> transactions as set forth herein. These individual Defendants are also independently liable for the false and defamatory statements made and published about Mr. Oldham's occupation and business.

Doc. 1-1, Orig. Pet. Ex. A-2 ¶¶ 8, 17-20, 23, 28. The Court determines that Oldham has pled sufficient facts such that there is a reasonable possibility that he will be able to recover against Dehning.

While his allegations are not as factually specific and exhaustive as possible, the Court concludes that Oldham has alleged sufficient facts throughout the course of his Complaint to establish each and every element of a fraud claim against Dehning. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 23; *see also Meadows*, 877 S.W.2d at 282. Oldham successfully alleges the first element of fraud, material misrepresentation, when he alleges that Dehning represented that Oldham had met his performance goals in order to qualify for early graduation. Doc. 1-1, Orig. Pet. Ex. A-2 ¶¶ 17, 23. "Material means a person would attach importance to and would be induced to act on the information in determining his choice of action in the transaction in question." *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.). As Oldham's Complaint demonstrates, Dehning's alleged representations as to early graduation were such that they would induce a reasonable person to alter his course of conduct with regards to the development and focus of his business, thus making them material within the context of the RAE Agreement. Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 23. Additionally, these alleged representations were false, meeting the second element of Oldham's fraud claim, as Dehning told Oldham that Oldham's production was sufficient to graduate early (*id.* ¶ 17) only to

reveal two months later that he would not graduate early due to insufficient production (*id.* ¶ 18).[2]

Although Oldham's allegations as to the third and fourth elements of his fraud claim are spare, his allegations "that Mr. Dehning . . . knew these representations to be false, made these representations recklessly, as positive assertions, and without knowledge of their truth" and that "Mr. Dehning, individually, made the representations with the intent that Plaintiff act on them," in addition to the other allegations that Oldham makes with regards to Dehning's position within Nationwide and the circumstances surrounding the representation, are sufficient under the Texas pleading standard to make out a claim for fraud. *See, e.g.*, *Murphy v. Broyhill Furniture Indus., Inc.*, No. 3:08-CV-2092-M, 2009 WL 1543918, at *5 (N.D. Tex. June 2, 2009) (concluding that allegations that an individual defendant made "material representations they knew were false" were sufficient under Texas law to show that the individual defendant was properly joined); *Urquilla v. Allstate Texas Lloyd's*, No. 10–00648, 2010 WL 3447591, at *2-*3 (S.D. Tex. Aug. 30, 2010) ("Although it is true that Plaintiffs' pleadings do not distinguish the actions of Andrews from those of Allstate, it is neither

---

[2]The Court notes that while a party may not be held liable for fraud simply because it failed to perform as promised, *Moore v. Altra Energy Tech., Inc.*, 321 S.W.3d 727, 738 (Tex. App.–Houston [14th Dist.] 2010, pet. denied), Oldham's claims are more specific than just stating that Dehning committed fraud when his representations that Oldham would graduate did not come to pass. Specifically, Oldham claims that Dehning informed him that he had *already* met his production goals and had thus qualified for early graduation. Doc. 1-1, Orig. Pet. Ex. A-2 ¶¶ 17-18. Oldham's claim is therefore that Dehning's representation was false when made and not that Dehning made a promise that was later not performed. Similarly, Dehning did not just express a belief when stating that Oldham had met his production goals to qualify for early graduation. *See* doc. 14, Defs.' Resp. 5; *Presidio Enterprises, Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 679 (5th Cir. 1986) ("Opinions and beliefs reside in an inner sphere of human personality and subjectivity that lies beyond the reach of the law and is not subject to its sanctions."). According to Oldham's Complaint, Dehning, in his position as a Nationwide manager, made an affirmative representation that Oldham's "production was sufficient to qualify him for early graduation and to qualify him as an IC agent." Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 17. Oldham therefore alleges that Dehning made a statement of fact, not an expression of belief, and such statements of fact, if properly alleged, can support a claim for fraud. *Presidio*, 784 F.2d at 679.

unreasonable nor unusual that Plaintiffs would be unaware, prior to conducting any discovery, of the specific actions taken by each of the Defendants with respect to adjustment of their claim.").

Finally, Oldham sufficiently pleads the final element of fraud, reliance, when he claims "that Plaintiff relied on these representations by, including but not limited to, concentrating on certain aspects of his agency and not other (sic)." Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 23. Based on the foregoing allegations, the Court cannot infer that there is no possibility that Oldham will recover against Dehning under Texas law, *Smallwood*, 385 F.3d at 573, and therefore Defendants' claim of improper joinder fails.

Nationwide and Oldham argue that Oldham's allegations are conclusory, but only cite to cases applying the federal pleading standard. Doc. 14, Defs.' Resp. 7-11. As noted above, the federal pleading standard is not in effect in Texas, at least not yet, and therefore this Court does not find the Defendants' arguments centered on federal cases persuasive. *See Krenke*, 2014 WL 1315896, at *3. Furthermore, the Court notes that Oldham has made specific allegations against Dehning individually throughout the Complaint that are sufficient under the Texas pleading standard to make a claim for fraud, rather than simply leveling generalized allegations against the Defendants as a group. *Cf. Centro Cristiano Cosecha Final, Inc. v. Ohio Cas. Ins. Co.*, No. H-10-1846, 2011 WL 240335, at *14 (S.D. Tex. Jan. 20, 2011) ("No *specific misrepresentation* by [non-diverse defendant] to Plaintiff is pleaded, and the fraud claim has no foundation") (emphasis added).

In a similar vein, Nationwide and Dehning argue that Oldham's Complaint does not meet the Fifth Circuit's particularity requirement for pleadings in fraud cases. Doc. 14, Defs.' Resp. 11; *see U.S. ex rel. Russell v. Epic Healthcare Mgmt. Grp.*, 193 F.3d 304, 308 (5th Cir. 1999) (applying FED.

R. CIV. P. 9(b)). But, again, *Russell* is a federal case applying a Federal Rule of Civil Procedure that contains a heightened pleading standard. Such a heightened particularity requirement does not apply in cases applying the Texas pleading standard. *Murphy*, 2009 WL 1543918, at *5 ("This Court will not impose the heightened federal pleadings requirements on actions immediately upon removal, so as to defeat state court jurisdiction on federal pleading requirements").

The fact that Dehning was an employee of Nationwide when he made the alleged misrepresentations also does not change the Court's analysis. The Complaint asserts individual liability against "the individual Defendants" (of which there is only one: Dehning) for "fraud and misrepresentations." Doc. 1-1, Orig. Pet. Ex. A-2 ¶ 28. In Texas, "[a] corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984). Even when acting as an agent for the corporation, an employee is personally liable for fraud that he participates in. *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 542 (Tex. App—Corpus Christi 1989, writ denied). Oldham is entitled to join as many defendants as could potentially be liable to him, in an abundance of caution, because he loses his rights arising out of these events against anyone whom he fails to join. *See Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.*, 837 S.W.2d 627, 630 (Tex. 1992).

Nationwide and Dehning further argue that any oral statements made by Dehning are "precluded" by the merger and non-modification clauses in the RAE Agreement. Doc. 14, Defs.' Resp. 9. They rely on two paragraphs in the RAE Agreement for support: paragraphs 37 and 38. Paragraph 37 ("Non-Modification Clause") reads:

> Except as otherwise provided herein . . . [Oldham] acknowledges and agrees that this Agreement cannot be modified or amended except by a writing signed by both parties and that such modification or amendment is not valid or enforceable unless signed on behalf of Nationwide by the Regional Vice President.

Doc. 7, Am. Ex. A ¶ 37. Paragraph 38 ("Merger Clause") reads:

> The terms and conditions contained in this Agreement supersede all prior and oral and written understandings between [Oldham] and Nationwide and constitute the entire agreement between them concerning the subject matter of this Agreement.

*Id.* ¶ 38. These two clauses only have an effect on determining the terms of the contract between Oldham and Nationwide. Oldham's claim against Dehning is for fraud rather than breach of contract, so it is not premised on the terms of the contract and does not even require the existence of a contract. Oldham does not allege that anything Dehning said was an attempted modification of the contract, but rather that Dehning's statements constituted material and false representations. Accordingly, the Merger and Non-Modification Clauses have no effect on Oldham's fraud claim against Dehning.

The Court concludes that, under the applicable Texas "fair notice" pleading standard as informed by the new Texas Rule of Civil Procedure 91a, Oldham's Complaint is sufficient against Dehning. Though Oldham's Complaint could have been more clearly pleaded and the case is close, the default paradigm is that federal courts lack jurisdiction, and doubts are to be resolved in favor of remand. *Gasch*, 491 F.3d at 281-82. The Defendants failed to meet their heavy burden to show that Oldham has no possibility of recovering against Dehning under state law. Dehning is a properly joined, forum defendant whose presence as a defendant precludes removal under 28 U.S.C. § 1441(b)(2).

## IV.

## CONCLUSION

For the reasons stated above, removal was improper and Plaintiff's Motion to Remand is **GRANTED**. This case is **REMANDED** to the 14th Judicial District Court of Dallas County, Texas, for further proceedings. Accordingly, Defendants' Motion to Transfer is **DENIED as moot**.

**SO ORDERED.**

**Dated: August 5, 2014.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE